The opinion of the court was delivered by
McEnery, J.
These suits were instituted in the month of December, 1890, against O. B. Andrus, who had on the 24th day of November, 1890, made a cession of property, obtained the usual restraining order from the judge and an order for a meeting of his creditors.
The plaintiffs in these suits made substantially the same allegations and obtained writs of attachments upon a stock of goods, wares and merchandise, at the time in the possession of one L. V. Major.
They allege that on the 24th day of November, 1890, said Andrus made what purports to be a cession of property; and that the same was acepted by the judge subject to the action of the creditors at a meeting to be held, as appears by the suit of Clinton B. Andrus vs. *1075 His Creditors, No. 1474; that in said cession and in the schedule of assets annexed to his petition said Andrus did not include all his property, and especially a lot of goods, wares and merchandise valued at $2000, and which previous to his surrender and in anticipation óf it he, the said Andrus, moved out of his store into a storehouse situated in another part of the town of Opelousas and placed in the possession of said L. Y. Major, the simulated and pretended owner, but really the clerk and agent of said Andrus; and that said Major was selling and disposing of said goods for the use and benefit of said Andrus; that said Andrus had also concealed from his creditors a large amount of cash; and that in withholding said goods and cash from his schedule he did so knowingly and with the intent to place the same beyond the reach of his creditors, and to defraud them; that a short time before the cession he ordered goods from merchants on ninety days’ credit, which goods were shipped to him and concealed and withheld from his cession and put on sale for his account, use and benefit, by the said L. V. Major; that Morris Mc-Graw, one of the plaintiffs, on the 18th of November, 1890, through his agent, sold a bill of goods to said Andrus on ninety days’ credit, and which on being shipped to him on the 20th and delivered on the 22d of November were immediately turned over to L. Y. Major; that a short time before Andrus made his surrender, and after he had placed said stock of goods in possession of Major, he ordered from Scharff Bros., of St. Louis, a delivery wagon and harness and six barrels of apples, which he directed to be shipped direct to L. Y. Major, the apples to go into his stock and the delivery wagon to aid the said Major the more effectually to carry on the business which he was carrying on for said Andrus; and that in order to conceal the fact that said delivery wagon was to be used really in his service and for his benefit, said Andrus ordered Scharff Bros, to have L. Y. Major’s name painted on the wagon and shipped direct to the latter; that said Andrus fraudulently omitted said delivery wagon and harness from his assets, but placed Scharff Bros, on his bilan as ordinary creditors; that according to the schedule his total assets are $16,094.30 and his debts amount to $27,176.22; that the inventory taken of,the property shows assets amounting to $17,175.22, and his privilege and mortgage debt amounts to $17,154.15, by which showing next to nothing will be realized with which to pay the ordinary creditors; that the concealment and diversion of his property and *1076 fraudulent cession made by the defendant, Andrus, is injurious to them and other creditors, as it leaves substantially nothing with which to meet their claims if said cession be legalized and definitely accepted; that the order, of court accepting the cession was granted in error, and said order as well as all the other; insolvency proceedings taken by said Andrus, should be set aside and annulled.
Tne plaintiffs prayed for citation upon Andrus and upon Dr. Vincent Boagni, provisional syndic of his estate. They pray further, that the cession of said Andrus and the order of the judge accepting the same be set aside and annulled, and that their attachments upon the stock of goods in possession of said Major, the delivery wagon, harness, etc., be maintained and the property sold to satisfy their debts.
C. B. Andrus filed an answer, denying all the charges of fraud, setting up that the charges are false, libellous, and that he has suffered damages to the amount of $5000, which he claims in reconvention.
The provisional syndic, Dr. Vincent Boagni, did not file any formal answer, but some time after the attachments were levied, and in answer to a rule taken by the plaintiffs to show cause why the goods should be sold as perishable property and the proceeds to remain in the sheriff’s hands, subject to the determination of the suit, he opposed the rule and asked that the property be delivered to him as provisional syndic “in case the same belongs to the insolvent.”
L. V. Major intervened in the suits, claiming to be the bona fide owner of the property attached. He also made a large claim for damages.
The plaintiffs then moved to strike from Major’s intervention his prayer for damages against him, upon the ground that the District Court of this parish was without jurisdiction in the premises, they being non-residents. The court sustained the motion and struck out the claim for damages.
The plaintiffs then answered the intervenor’s petition; charging that his claim of ownership was a fraudulent simulation; but if not a simulation pure and simple, then in that event that the property was acquired fraudulently, and they prayed in that event and in the alternative that his title be annulled and the property be imputed to their debt.
*1077 These five consolidated suits were tried together, and having been submitted to a jury the following verdict was rendered:
“Verdict for plaintiffs, rejecting the claims of L. V. Major, intervenor, for the goods claimed by him, sustaining the writs of attachment at cost of defendant.”
The lower court' thereupon gave judgment to each of the plaintiffs for the amounts claimed by them respectively; rejected and disallowed the intervenor’s claim of ownership to the property attached, and maintained and perpetuated the attachments.
The questions to be considered are whether individual creditors may attach the insolvent debtor where it is alleged and shown that he is using the staying order of the' judge as a shield while he is fraudulently disposing of his property, and if so what is the effect of the suit instituted by the creditor, whether the property not placed on the schedule, and seized by him under a conservatory writ, and secured under an action era déelara.tion de simulation inures to the benefit of the individual creditor or to all the creditors.
The cession or surrender of property is the relinquishment that a debtor makes of all his property to his creditors when he finds himself unable to pay his debts. O. O. 2170.
When the cession is made and accepted by the creditors, the property passes from the debtor, subject only to reinvestment in him before they have sold it, by a payment by him of the amount of his debts, with the expenses attending the cession. It is only on this condition that he can regain possession of the property. It is in a situation similar to property seized under a fi. fa. The debtor’s possession and control over the property ceases, and can only be recovered by paying the debt and costs. He is an utter stranger to the property until he redeems it by paying the debt. Oivil Oode, 2178; R. S., Sec. 1791.
The creditors are vested with full power to administer and sell the property surrendered for the benefit of all the creditors. Their dominion over this property is supreme, and as all the property of the debtor, whether on the schedule or not, passes by the cession and acceptance, they have the same power of control in that concealed and left off the schedule by the debtor. The resident creditor, whether participating in the insolvent proceedings or not, is bound by the surrender and acceptance, and it may be stated as a general rule that no individual creditor can *1078 take any action in relation to the property surrendered to give him an advantage over the other creditors. Whatever property he may be instrumental in recovering that belonged to the debtor and passed with the cession inures to the benefit of all the creditors. Vicksburg Liquor and Tobacco Co. vs. Jeffries; Anderson vs. Duson, 85 An. 917.
We think it is amply supported by authority that the creditors, particularly when no syndic has been elected, have the undoubted right to sue for and recover property which the debtor has fraudulently concealed. The debtor had never parted with the ownership of the property, and title was still vested in him until he made the surrender, when it passed to the creditors. The recovery of the property by judicial process can not therefore give an individual creditor any claim upon it superior to the other creditors. He would recover only that which was vested in all the creditors, himself included. His act would therefore necessarily inure to the benefit of all the creditors.
But the plaintiffs contend that the debtor had been convicted of fraud and that ipso facto the order accepting the cession and the acceptance of it by the creditors was annulled and the debtor’s property was reinvested in him, and the creditors had the right to pursue it individually.
There is only one condition, as stated, that the debtor can get possession of the property, and that is that he pays the amount of his debts. Civil Code, 2178.
The law never intended that on conviction of fraud that he should regain possession of his property. It would be conferring a benefit upon him. As in this case, the property may have been sold and the proceeds in the hands of the syndic. What prevents him, before judicial process can be leveled at him, receiving this amount from the syndic and placing it beyond the pursuit of his creditors? The benefits conferred upon the honest and unfortunate debtor by the insolvent laws are discharge from his debts and immunity from judicial pursuit of his person and property. The conviction of fraud can only operate upon his person, depriving him of these privileges and subjecting him to imprisonment.
In case of Williams vs. Judge, 42 An. 71, it was held that the court having jurisdiction of the insolvency, and having granted a respite, did not strip itself of jurisdiction over a suit to annul the *1079 order by creditors, accompanied by a prayer tor conservatory process, which in that case was the service of an attachment. In the opinion this court said: “It is right and proper, particularly in ■cases of respite, that creditors, notwithstanding the order staying proceedings, should retain the privilege of protecting themselves in proper cases, not only by the arrest of their debtor, but also for the ■seizure of his property for their common benefit.”
In the ease of Mitchel vs. Dalton, 44 An. 825, a single creditor on his individual claim attempted to secure by attachment proceedings, commenced before the cession of property, a privilege on the property of the debtor, which was surrendered for his exclusive benefit, -and ignored the insolvent proceedings. The dismissal of the suit and the dissolution of the attachment followed this irregular and unwarranted proceeding. We adhere to the doctrine in that case. But in this case the attachment was levied on property not on the schedule, but which was found by the plaintiff creditors, and seized for their individual benefit. The insolvent proceedings are not ignored, but are made the basis of the suit. The irregularities therein, in withholding this property from the schedule, is one of the grounds for the suit. Although conducted separately by the creditors for their individual benefit, the proceedings may be consolidated with the insolvent proceedings for the benefit of all the creditors. Through the intervention of the provisional syndic the creditors have made themselves parties to the suit, and they are entitled to its benefits for the simple reason that creditors can not pursue the property of the insolvent for their individual use. Anderson vs. Duson, 35 An. 917; Haydeh vs. Yale et al., 45 An.
' The plaintiffs assimilate their suits to the revocatory action, and as plaintiffs in said action are entitled to the benefit of the property recovered and that it should be applied to their debt. But this action is one to obtain property which it is alleged never passed from the debtor. It is a part of the insolvent’s estate. There was no contract by which the property was transferred.
When the contract is serious, though fraudulent, the decree avoids it only as to the complaining creditor, and subjects it to the payment of his debt. Dunn vs. Woodward, 11 An..267; Adams & Co. vs. Coons et als., 37 An. 305.
In the last case referred to above, which is the latest on this subject, this court said:
*1080 “ It is claimed that plaintiff can take no benefit from, the judgment in the case of Friedlander vs. Brooks, annulling the pretended title of Mrs. Coons land declaring ‘ Killikroskie ’ to be the property of Tempel S. Ooons, but said judgment only availed Friedlander and entitled him to be paid by preference. If the action had been merely revocatory such could have been the law, but being purely an action en déelaration de simulation it is well settled that the effect of the judgment was to unmask the title in favor of all creditors and all persons interested, and to declare that the property had never ceased to be the property of the debtor.” Authorities cited in case Lucus vs. Darmand, 11 An. 168; Dunn vs. Woodward, 11 An. 265; 1 Larombiere, Theory of Obligations, p. 776.
The provisional syndic has not aided in unmasking the fraudulent concealment of the debtor’s property. This has been accomplished by the plaintiff creditors, who have devoted time, money and labor to reach this property. The mass of creditors receive the benefits. They must pay for all costs and expenses, including attorneys’ fees.
It is therefore ordered, adjudged and decreed that the judgments appealed from in each of the cases of Morris McGraw, Zuberbier & Behan, Wackerbarth, Joseph & Oo.,. Oppenheimer & Co., Scharff Bros. vs. O. B. Andrus, be reversed so far as it decrees that the proceeds of the property attached be applied to the claim of the plaintiffs; and it is now ordered that said funds or proceeds of said property be turned over to the provisional syndic of the insolvent estate of O. B. Andrus, subject to the rights and claims of all the creditors therein. In all other respects the said judgments are affirmed.
It is further ordered that the insolvent’s estate pay all costs, including attorneys’ fees.